UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

SEQUIN, LLC,                                              :
     Plaintiff,                                    :
                                                         :
     v.                                            :    C.A. No. 20-62WES
                                                         :
KIMBERLY RENK, GREGORY C. DRYER,                          :
and BUNNIES UNLIMITED, LLC, d/b/a SEQUIN,                 :
     Defendants.                                   :

## MEMORANDUM AND ORDER

PATRICIA A. SULLIVAN, United States Magistrate Judge.

     Invoking the abstention doctrine created by Colorado River Water Conservation District

v. United States, 424 U.S. 800 (1976), Defendants have moved to stay Counts I-IV ("Counts I-

IV") of Plaintiff's verified amended complaint pending the outcome of Renk v. Renk, Index No.

652439/2018 (N.Y. Sup. Ct.), a New York state court case that has been actively litigated since

2018 and is nearly trial-ready.  ECF No. 29.  For the reasons that follow, Defendants' motion to

stay Counts I-IV is granted.  Defendants have also moved to dismiss the remaining Counts (V

and VI) of the amended complaint pursuant to Fed. R. Civ. P. 12(b)(6).  ECF No. 30.  The Court

will separately address that motion by report and recommendation.[1]  For now it remains under

advisement.

---

[1] Defendants' motions to stay Counts I-IV and to dismiss Counts V and VI (together with Plaintiff's now withdrawn motion for preliminary injunction) were referred to me as a package for report and recommendation.  See Docket at June 4, 2020.  Because Defendants' revised Colorado River motion does not seek dismissal but only a stay of certain claims, it appears to fit within the scope of 28 U.S.C. § 636(b)(1)(A).  See PowerShare, Inc. v. Syntel, Inc., 597 F.3d 10, 14 (1st Cir. 2010) (motion to stay is nondispositive and should be determined by magistrate judge pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A); "[a]lthough granting or denying a stay may be an important step in the life of a case . . . in the last analysis a stay order is merely suspensory"); Shire City Herbals, Inc. v. Blue, Case No. 15-cv-30069-MGM, 2015 WL 5437091, at *1 n.1 (D. Mass. Sept. 15, 2015) (motion to stay is not dispositive and does not require a report and recommendation by magistrate judge); cf. Patton v. Johnson, 915 F.3d 827, 832 (1st Cir. 2019) (error for magistrate judge to address motion to compel arbitration as dispositive).  This approach is consistent with that taken by courts that have directly addressed the issue.  See, e.g., Harris v. TD Ameritrade, Inc., No. 17-CV-6033 (LTS) (BCM), 2018 WL 1157802, at *1, 4 (S.D.N.Y. Feb. 14, 2018) (Colorado River "stay motion is within the scope of [magistrate judge] reference . . . pursuant to 28 U.S.C. § 636(b)(1)(A)"); Cummins-Allison Corp. v. SBM Co., Civil No. 12-00207 HG-KSC, 2013 WL 12205188, at *1 (D. Haw. Oct. 7, 2013) (magistrate

## I.     BACKGROUND

This case arises out of a longstanding family fight over ownership and control of Sequin,

LLC, ("Sequin"), a successful New York-based[2] seller of "well-priced, luxurious costume

jewelry across the United States."  ECF No. 3 at 6.  Among the many matters in dispute,

skirmishes have erupted regarding control over, and the use of, Sequin's trademarked name and

eponymous brand.  The internecine strife has pitted Kimberly Renk ("Kim") and her husband,

Gregory C. Dryer ("Greg"), together with their company, Bunnies Unlimited, LLC,

("Bunnies"),[3] against certain of Kim's family members: Kim's sister, Linda Renk ("Linda"), her

brother, Richard John Renk, Jr. ("RJ"), and her father, Richard Renk, Sr. ("Richard").  Linda, RJ

and Richard are the legal holders of ownership interests in Sequin that collectively constitute

100%.  Kim claims that 50% of Sequin is hers.  See generally ECF No. 29-18 at 30.

judge's order determining a non-dispositive pretrial matter appropriate approach for Colorado River stay motion).
This approach contrasts with that deployed for a Colorado River motion that seeks *dismissal* or stay.  See Elmendorf
Grafica, Inc. v. D.S. America, Inc., 48 F.3d 46, 49-50 (1st Cir. 1995) (proper for magistrate judge to issue
recommendation on motion to dismiss or stay based on Colorado River); Tirado-Gardon v. Aragunde-Torres, No.
Civ. 06-1044 (JAG), 2006 WL 696080, at *1 (D.P.R. Mar. 17, 2006) (Colorado River motion seeking dismissal or
stay dealt with by report and recommendation).  Based on this guidance, I have addressed the motion to stay
pursuant to 28 U.S.C. § 636(b)(1)(A).  Nevertheless, whether a stay order under Colorado River is dispositive of a
claim or defense remains a debatable matter.  See Aventura Techs. Inc. v. World of Residensea II Ltd., 646 F. App'x
92, 96 (2d Cir. 2016) (district court should have reviewed magistrate judge's order *de novo*); compare Burns v.
Watler, 931 F.2d 140, 142-43 (1st Cir. 1991) ("when the sole purpose and effect of the stay are precisely to
surrender jurisdiction of a federal suit to a state court, . . . stay order must be considered a final order") (internal
quotation marks and citations omitted), with Acton Corp. v. Borden, Inc., 670 F.2d 377, 379-380 (1st Cir. 1982)
(ordinarily district court order to stay pending developments in different action involving same issues is not
appealable).  Further, this motion to stay required me to make factual determinations that would be proposed if this
motion should fall under 28 U.S.C. § 636(b)(1)(B).  Accordingly, I alternatively remind the parties that, to the extent
that any party believes that this motion falls under 28 U.S.C. § 636(b)(1)(B), any objection to its findings of fact and
conclusions of law must be specific and must be filed with the Clerk of Court within fourteen days after the date of
service of the decision.  See Fed. R. Civ. P. 72(b); DRI LR Cv 72(d).  Failure to file specific objections in a timely
manner constitutes waiver of the right to review by the district court and of the right to appeal the district court's
decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

[2] Sequin is a Minnesota limited liability company whose principal place of business is in New York; it also has an
office in Rhode Island.  ECF No. 17 ¶ 7.

[3] Sequin alleges that Bunnies' certificate to conduct business was revoked in 2014 by the Rhode Island Secretary of
State.  ECF No. 32 at 1 ¶ 3.  The likelihood that Kim has been operating solo using "Bunnies" as a fictitious name
reinforces the finding *infra* that, for Colorado River purposes, Kim is Bunnies' *alter ego*, but otherwise does not
materially impact the issues before the Court.

Since May 2018, this war has been waged in state court in New York.  Then, on February 7, 2020, Sequin opened a second front in federal court in the District of Rhode Island.  The federal case focuses principally on a single Sequin-branded store that was operated for nineteen non-consecutive days by Kim/Bunnies at 13 Touro Street, Newport, Rhode Island, yielded less than $4,000 in revenue, and had been closed for a month when the Rhode Island federal case was filed.  See ECF No. 10-3 at 5 ¶¶ 16-17 & n.1; ECF No. 17 ¶ 10.

### A.     *Renk v. Renk* – New York State Court Litigation Pending Since May 2018

Since May 2018, the Renk family disagreement has been the subject of a case brought by Kim against Sequin, Linda, RJ and Richard that has been pending in the Supreme Court of New York County.  Renk v. Renk, Index No. 652439/2018 (N.Y. Sup. Ct.) ("Renk v. Renk").  Discovery in Renk v. Renk is largely completed.  ECF No. 29-8 ¶¶ 3-4.

In Renk v. Renk, Kim, claiming, *inter alia*, breach of contract, unjust enrichment, and seeking an accounting and the imposition of a constructive trust, alleges that she is a cofounder (with her sister, Linda) and the rightful owner of 50% of Sequin,[4] as well as that Bunnies, a company operated by Kim and owned and financed by Kim and her husband, Greg, has collaborated with Sequin for many years by selling Sequin-branded products at retail stores in key locations, including in Rhode Island.  ECF 29-18 at 30 ¶ 1; id. at 31 ¶ 4; id. at 42 ¶ 51.  Kim's Renk v. Renk pleading asserts that Sequin has knowingly benefited from Bunnies' sales of Sequin-branded products in that Bunnies' success has dramatically increased Sequin's

---

[4] For a more detailed exposition of the dispute over Sequin's ownership, the reader is directed to the opinion of Judge Barry Ostrager, denying in part a motion to dismiss Kim's second amended complaint in Renk v. Renk.  ECF No. 29-17, reported at Renk v. Renk, No. 652439/2018, 2020 WL 2572384, at *5 (N.Y. Sup. Ct. May 21, 2020).  Review of the New York public docket in Renk v. Renk reveals that, on June 17, 2020, Sequin, Linda, Richard and RJ took an interlocutory appeal of this decision; however, the underlying case is not stayed and continues to proceed towards trial.  See Renk v. Renk, No. 652439/2018, NYSCEF No. 237.  A status conference is scheduled in the matter on October 6, 2020.  Id. at No. 275.  Since the parties did not bring this appeal to this Court's attention, I conclude that they considered it immaterial to the issues presented here; it will not be mentioned further.

revenues and added to its brand exposure.  Id. ¶ 51.  For their part, Sequin, Linda, RJ and

Richard have admitted that Kim and Linda cofounded Sequin in 2000 and that Sequin celebrated

Kim as its cofounder on its website.  ECF 29-11 at 1-2.  Further, in now-superseded pleadings,

Linda and Richard (who control Sequin) conceded that Kim is entitled to some "interest" in

Sequin beyond her status as an employee holding a "well-compensated managerial position,"

although they vigorously dispute her claim of entitlement to 50%.  ECF Nos. 29-9 ¶¶ 1-2; 29-11

¶¶ 1-2; Renk v. Renk, 2020 WL 2572384, at *1.  In their original answer to what became ¶ 51,

Sequin, Linda, RJ and Richard sidestepped Kim's allegations about Bunnies' authorized

operation of Sequin-branded stores, denying only that they had information sufficient to form a

belief that Bunnies' sales of Sequin-branded products in Rhode Island and elsewhere was

"collaborative" with Sequin and that the collaboration benefited Sequin.  ECF No. 29-11 ¶ 43.[5]

   Sequin[6] asserted counterclaims in Renk v. Renk against Kim.  ECF No. 29-9; ECF No.

29-11.  The Sequin counterclaim that is pertinent to the pending motion is Count III, which was

first asserted on June 21, 2018.  ECF No. 29-11 at 12 ¶¶ 12-15 ("Count III").  As presented to

this Court, Count III is titled "FAILURE TO OBTAIN LICENSE TO USE SEQUIN'S NAME

AND BRAND" and alleges that Kim has used Sequin's name and brand for commercial

purposes in connection with her "Businesses," which conduct has damaged Sequin, including the

---

[5] Sequin did not bring to this Court's attention its answer (joined by Linda, Richard and RJ) to the second amended complaint in Renk v. Renk, which it filed on June 22, 2020.  See Renk v. Renk, No. 652439/2018, NYSCEF No. 238.  That answer differs from the prior pleadings in Renk v. Renk in several key respects.  First, it omits the admission that Sequin's website identifies Kim as a cofounder.  Id. ¶ 1.  Second, it omits the admission that Linda and Richard acknowledge that Kim is entitled to an interest in Sequin.  Id. ¶ 4.  Third, instead of denying information regarding whether Bunnies collaborated with Sequin to sell its products, the new answer substitutes an outright denial.  Id. ¶ 51.  What weight to afford these now-abandoned admissions is not in issue before this Court.  Cf. Kwiecinski v. Chung Hwang, 885 N.Y.S.2d 783, 784 (N.Y. App. Div. 2009) ("An admission of fact in an original pleading does not lose its effect as an admission of fact because the pleading has been superseded [sic] as such by an amended pleading") (internal quotation marks omitted); Bengtson v. Hines, 457 A.2d 247, 249-50 (R.I. 1983) (pleadings that have been either resolved or superseded are viable as admissions for purpose of impeaching credibility).

[6] Linda, RJ and Richard did not join Sequin's counterclaims against Kim in Renk v. Renk.

dilution of its brand and the impairing of its reputation.  Id.  Count III pleads only facts; it is silent regarding the law Sequin contends should be applied to those facts.  For Count III remedies, Sequin seeks damages and a permanent injunction barring Kim and "all those acting in concert . . . with her" from "using Sequin's name and brand in connection with [Kim]'s Businesses."  Id. at 13.  Not presented to this Court is Sequin's latest version of Count III of its counterclaim,[7] which differs from the prior iteration in that it omits the allegation that the conduct is "continuing," as well as the reference to Kim's "Businesses."  Renk v. Renk, Index No. 652439/2018, NYSCEF No. 238 at 19.  However, it sustains the core allegation of improper use of Sequin's name and brand and seeks the same remedies – damages and an injunction barring Kim and "those acting in concert or participation with her" from continuing the use of Sequin's name and brand.  Id. at 20.

The factual material developed through the nearly completed discovery (ECF No. 29-8 ¶¶ 3-4) in Renk v. Renk as bearing on Count III of the counterclaim appears to establish[8] that Kim, acting through Bunnies, was authorized by Sequin at a Sequin "Management meeting," held in 2010 and attended by Kim, Linda, RJ, and Richard, to resell Sequin products through "pop-up"[9] stores owned and operated by Bunnies.  ECF No. 10-4 at 2-5.  This material suggests that there is a dispute over whether Bunnies' ownership was supposed to be spread to other Renk family members or to Sequin itself (paralleling the battle over Sequin's ownership).  See id. at 4; ECF

---

[7] See n.5, supra.

[8] To be clear, this Court is not finding these facts to be true.  This material was presented to this Court because of Sequin's District of Rhode Island motion for preliminary injunction.  ECF No. 3.  The motion for an injunction required this Court to burrow deeply into the Renk v. Renk fact record, resulting in my on-the-record observations regarding the motion's lack of merit and culminating in its withdrawal.  This evidence is summarized here because it is pertinent to the finding infra that the filing of the federal case in Rhode Island was vexatious and contrived.

[9] Pop-up stores are short-term retail operations in a temporary location to "take advantage of a faddish trend or seasonal demand."  See, e.g., https://www.merriam-webster.com/dictionary/pop-up (of a business) (last visited Oct. 2, 2020); https://www.investopedia.com/terms/p/pop-up-retail.asp (last visited Oct. 2, 2020).

No. 11 at 9-10; ECF No. 12 ¶ 5.  It also reflects that (1) Sequin supported Bunnies' sales of Sequin-branded products with advertising, including for the Bunnies-operated Sequin-branded stores in Newport, Rhode Island, ECF No. 10-3 at 5 ¶¶ 14-15; id. at 102-04; (2) Sequin treated the Bunnies sales at these stores as a separate line item of Sequin's business, ECF No. 10-3 at 108-29; (3) Linda and RJ strategized about what they referred to as Bunnies' "'Sequin' branded stores," ECF Nos. 10-5; 10-6; 10-8; 10-9; 10-10; (4) Bunnies provided Sequin (via emails directed to Linda and RJ among others) with daily store-by-store Sequin-branded sales reports (including for the Bunnies stores in Newport, Rhode Island), ECF No. 10-3 at 5 ¶ 15; id. at 14-64; id. at 66-100; ECF No. 10-7 at 3; and (5) as of 2010, Kim, RJ and Linda agreed that Sequin's "margins [were] 'huge'" on Bunnies' pop-up stores sales, ECF No. 10-4 at 5.

Apart from filing Count III,[10] until January 6, 2020,[11] Sequin did nothing to inform Bunnies or Kim that this ongoing arrangement – Kim/Bunnies selling Sequin-branded products at seasonal pop-up stores in key locations, including in Newport, Rhode Island – had been canceled or was no longer authorized.  ECF Nos. 10-7 at 3-5; 17 ¶ 43.  That is, beginning either in 2010 or 2013 (the record is ambiguous regarding the start date), and continuing without interruption after Renk v. Renk was filed and into 2020, there is evidence developed in Renk v. Renk establishing that Kim/Bunnies used the Sequin name and brand to sell Sequin-branded products at seasonal pop-up stores in Newport, Rhode Island, and elsewhere, and emailed the

---

[10] In federal court in Rhode Island, Sequin argued that Kim/Bunnies was notified by the June 2018 filing of Count III in Renk v. Renk that any implied license or authorization permitting Bunnies to use the Sequin marks had terminated so that Kim knew that the 13 Touro Street store in Newport was unauthorized.  ECF No. 11 at 11. Whether or not the argument holds water, it makes crystal clear that Renk v. Renk encompasses Bunnies' operation of Sequin-branded pop-up stores in Newport, Rhode Island, continuing into 2020, including the store at 13 Touro Street.

[11] As staging for the Rhode Island federal court case (discussed infra), on January 6, 2020, Sequin's counsel sent a cease and desist letter to Kim's counsel that targeted Bunnies' Newport store and asserted that her use of the Sequin name was unauthorized.  ECF No. 1-3.

daily sales reports to Linda and RJ, yet no one from Sequin ever said that these sales were not authorized or that a license would be required to continue the sales.  RJ admitted as much in his March 3, 2020, deposition taken in <u>Renk v. Renk</u>.  ECF No. 10-7 at 3-5.

Consistent with this longstanding arrangement, into 2020, Kim/Bunnies opened and operated Newport pop-up stores; the last one, located at 13 Touro Street, opened on October 1, 2019.  ECF No. 10-3 at 4-5.  The 13 Touro Street store was open for a total of nineteen non-consecutive days during the 2019 holiday selling season, closing on January 6, 2020.  <u>Id.</u> at 5.  Consistent with the prior practice, Bunnies' sales reports for 13 Touro Street were emailed to Linda and RJ at Sequin beginning on the first day of operations (October 1, 2019).  ECF No. 10-3 at 14-64.  As presented to this Court, the report emailed on December 29, 2020 at 3:59 p.m. reflects the last sales from the 13 Touro Street store.  <u>Id.</u> at 59.  The emailed reports for January 4 and 5, 2020, report no sales.  <u>Id.</u> at 63-64.  In total, 13 Touro Street sales were less than $4,000.  ECF No. 10-3 at 5 ¶ 16 n.1.  After January 5, 2020, there are no more sales reports, confirming Kim's unrebutted averment that the store was open for returns on January 5 and 6, 2020, and has been closed since January 6, 2020.  ECF No. 10-3 at 5 ¶¶ 16-17.

With discovery nearly done, the trial in <u>Renk v. Renk</u> is set to begin on January 4, 2021.  <u>See</u> ECF No. 35-1 at 2 (Status Conference Order of June 1, 2020: "Court confirmed that the trial of this case will proceed on January 4, 2020[,][12] and that no adjournment of this trial date will take place for any reason.").  Specifically, the New York Supreme Court will shortly decide whether Kim is contractually or equitably entitled to be an owner of Sequin and, if she is, whether that impacts Sequin's authorization of Kim/Bunnies to use its name and brand, as well as whether Kim/Bunnies was or continues to be authorized to use the Sequin name at pop-up

---

[12] It is apparent from the face of the Status Conference Order that this is a typographical error and refers to the year 202<u>1</u> and not 2020.  <u>Renk v. Renk</u>, 2020 WL 2572384, at *5 (noting that the "January 4, 2021 trial date stands").

stores selling Sequin-branded products, including the store at 13 Touro Street in Newport, Rhode Island.

**B.** *Sequin v. Renk* **– Rhode Island Federal Court Litigation Launched in February 2020**

On December 28, 2019, (the day before Bunnies sent its last email to Linda and RJ, reporting on Sequin-branded product sales at 13 Touro Street), Sequin sent a hired investigator to Newport to photograph the 13 Touro Street store to demonstrate what the Renk v. Renk evidence suggests Kim/Bunnies was not trying to hide – that she was using the Sequin name to sell Sequin products. ECF No. 40 at 2 ¶ 3. Then, on January 6, 2020, the same day that the 13 Touro Street store ceased doing any business, Sequin's attorney of record in Renk v. Renk sent Kim's counsel in Renk v. Renk a cease and desist letter claiming that Sequin had not authorized the 13 Touro Street store to use its name and that such use infringed Sequin's marks. ECF Nos. 1 at 13 ¶ 39; 1-3. The letter demanded that Bunnies stop selling Sequin products at 13 Touro Street immediately. ECF No. 1-3. Kim's attorney responded one week later by pointing out that, since 2010, Bunnies had operated multiple Sequin's branded outlet stores at various locations in Newport with Sequin's knowledge and consent, and that an infringement claim would be groundless. ECF No. 13-1 at 2. After the cease and desist letter was sent (and despite Sequin having an office in West Warwick, Rhode Island, so that sending someone to Newport to investigate would have been a simple matter), Sequin failed to do anything to ascertain whether the 13 Touro Street store was continuing to operate. Instead, Sequin delayed another month and then, on February 7, 2020, filed its verified complaint and motion for preliminary injunction in this Court. ECF Nos. 1; 3.

Averred to by Linda "under penalty of perjury," the first iteration of Sequin's Rhode Island federal complaint is brought only by Sequin and names only Kim and an entity ostensibly

unknown to Sequin, named as "John Doe Corp, d/b/a Sequin."  ECF No. 1 ¶¶ 6-7.  This pleading opens with the disingenuous allegation that Kim is nothing more than a "disgruntled employee" who has been surreptitiously engaged in the "unlawful use of Sequin's famous and federally registered SEQUIN marks" to "disrupt and irrevocably destroy Sequin's business" through the operation of an unauthorized boutique operated in Newport, Rhode Island, which Sequin only just "discovered" on December 14, 2019.  ECF No. 1 ¶¶ 1-3, 28.  Having done nothing to investigate, Linda alleged under oath – incorrectly – that, in defiance of the cease and desist letter, "Defendants nonetheless are continuing the Infringing Acts."[13]  Id. ¶ 41.

The original Rhode Island complaint made four claims.  All are grounded in the core allegation that Kim was using Sequin's eponymous marks without authorization for commercial purposes resulting in consumer deception and confusion, dilution of the marks, and irreparable harm to Sequin's goodwill: "[a]t no time has Sequin given Defendants authorization or license to use the SEQUIN Marks in connection with the Rhode Island Store, any other boutique or store, or non-Sequin products."   Id. ¶ 34.  Based on these facts, Counts I and II invoke the Lanham Act, 15 U.S.C. §§ 1114, 1125(a), Count III relies on the Rhode Island common law of trademark infringement, and Count IV is grounded on R.I. Gen. Laws § 6-2-12 (injunctive relief for dilution of mark).  ECF No. 1.  For remedies, Sequin sought damages and injunctive relief that echoes the permanent injunction requested in Renk v. Renk: that the Court "enter an order enjoining [Kim and the purported unknown entity], and all those acting in concert with them . . . from using Sequin's trademarks, including the SEQUIN Marks, and from otherwise engaging in unfair competition with Sequin."  ECF No. 1 at 18.  Simultaneous with the filing of this verified

---

[13] Unsurprisingly in light of the family dysfunction exposed by these cases, Linda blames Kim, arguing that Kim's attorney's response to the January 6, 2020, cease and desist letter denied infringement but did not advise Sequin that 13 Touro Street had ceased operations.  ECF No. 11 at 6.

complaint, Sequin filed the motion for preliminary injunction, which relied on Linda's sworn

verification.  ECF No. 3.  That motion was abandoned after the Court questioned Sequin's

counsel regarding its *bona fides*, including the troubling discrepancies between the facts reflected

in discovery developed in <u>Renk v. Renk</u> and Linda's averments under oath.  ECF No. 40; <u>see</u>

ECF No. 16 at 6-7 nn.7, 8.

      Soon after Sequin filed the Rhode Island action, the Renk family battle intensified.  On

March 6, 2020, Sequin suspended Kim's employment effective immediately.  ECF No. 29-18 at

84.  In connection with this action, Linda and RJ sent a communication to Kohl's and other

Sequin customers, advising of Kim's suspension as follows:

> Kim Renk will be on a leave of absence effective today.  We have the same
> strong, talented and dedicated executive team, who are committed to continuity
> and uninterrupted execution of our business so there will be no change to our
> organization's functionality.

ECF No. 29-18 at 21 ¶ 77.  Kim's counter offensive to these actions began with the filing of a

new case in the New York Supreme Court on March 23, 2020 ("second New York state court

case").  <u>See</u> <u>Renk v. Renk</u>, Index No. 153019/2020 (N.Y. Sup. Ct.); ECF No. 29-18 at 2.  Putting

a public face on a contentious (and at times ugly) family dynamic, Kim's second New York state

court case alleges, *inter alia*, that Linda, RJ and Sequin exposed Kim to an "insidious hostile

work environment," constructively discharged her and sent the communication to Kohl's (and

others) with the "specific intent of destroying whatever standing Plaintiff had with customers she

had developed over the past 20 years."  ECF No. 29-18 at 3, 21, 25.  Next, on April 6, 2020, Kim

emailed Kohl's (and others) directly with her response to the Linda/RJ communication – Kim's

Kohl's email advised that she was being pushed out of Sequin by Linda and RJ in retaliation for

bringing <u>Renk v. Renk</u> and summarized the allegations in the second New York state court case,

together with a reference to where the publicly-available pleading could be accessed.  ECF No. 30-3; ECF No. 30-1 at 8.

Meanwhile, in the pending case in federal court in Rhode Island, on April 13, 2020, Kim filed her first <u>Colorado River</u> motion; based on the identicality of the parties and factual allegations, she styled the motion as "Rule 12(b) Motion to Dismiss under the *Colorado River* Doctrine."  ECF No. 15.  On April 27, 2020, Sequin fired back with the amended complaint, also verified by Linda.  ECF No. 17.  This time, instead of the reference to "John Doe Corp d/b/a Sequin," Sequin named Bunnies as a Defendant on Counts I-IV, as well as Greg, although the pleading is devoid of facts to justify his joinder, alleging only in a conclusory fashion that he is an owner and officer of Bunnies who, with Kim, operated the Touro Street store.  <u>Id.</u>  The amended complaint adds two new claims, Counts V and VI.  <u>Id.</u> at 24-26.  These are unrelated to Counts I-IV and are directed only against Kim based on Kim's email of April 6, 2020, to Kohl's and others; they allege that certain statements amount to defamation *per se* and tortiously interfered with Sequin's relationship with the recipients.  <u>Id.</u>

Kim, Greg and Bunnies responded to the amended complaint by renewing their <u>Colorado River</u> motion, this time seeking not to dismiss, but only to stay the portion of the case that is substantially similar to Count III in Sequin's <u>Renk v. Renk</u> counterclaim, that is, Counts I-IV in the federal complaint.  ECF Nos. 29; 29-1.  They also independently moved to dismiss the two new claims, Counts V and VI, for failure to state a claim.  ECF No. 30.

## II.     STANDARD OF REVIEW AND APPLICABLE LAW

The <u>Colorado River</u> abstention doctrine applies when a first-filed, parallel state court proceeding is underway – but only under exceptional circumstances.  <u>Somyk v. City Pers., Inc.</u>, C.A. No. 18-164-JJM-PAS, 2018 WL 4936004, at *1 (D.R.I. Oct. 11, 2018) (citing <u>Colorado</u>

River, 424 U.S. at 817-18); In re Novell, Inc. S'holder Litig., Civil Action No. 10-12076-RWZ, 2012 WL 458500, at *6 (D. Mass. Feb. 10, 2012).  The doctrine permits a district court to stay or dismiss a federal case when federal and state court proceedings overlap and "[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation," counsels for abstention.  In re Novell, 2012 WL 458500, at *6 (quoting Colorado River, 424 U.S. at 818-19).  In light of the "virtually unflagging obligation" of federal courts "to exercise the jurisdiction given them," Colorado River abstention carves only a narrow crevice in federal jurisdiction.  Jimenez v. Rodriguez-Pagan, 597 F.3d 18, 27 (1st Cir. 2010) (quoting Colorado River, 424 U.S. at 817; see Cohens v. Virginia, 19 U.S. (6 Wheat.) 264, 404 (1821) ("[c]ourt will not take jurisdiction if it should not: but it is equally true, that it must take jurisdiction, if it should").  Of all the abstention doctrines, Colorado River abstention is to be approached with the most caution, with "[o]nly the clearest of justifications" warranting dismissal of the federal court case.  Jimenez, 597 F.3d at 27 (quoting Colorado River, 424 U.S. at 819).

To apply the Colorado River doctrine, the Court must first decide whether the state and federal proceedings are "sufficiently parallel" with respect to the parties joined and issues presented.  Pullman Arms Inc. v. Healey, 364 F. Supp. 3d 118, 121 (D. Mass. 2019).  The focus is on substantial similarity – perfect identity of parties and issues is not required.  That is, a Colorado River stay may be ordered even when the federal claims do not perfectly duplicate the claims pending in the state court and the defendants in each suit are different.  Villa Marina Yacht Sales, Inc. v. Hatteras Yachts, 947 F.2d 529, 533-36 (1st Cir. 1991); Almeida-Leon v. WM Capital Mgmt., Inc., Civil No. 3:16-cv-01394-JAW-BJM; 2019 WL 2079852, at *31 (D.P.R. May 8, 2019).

12

To determine whether the *parties* are sufficiently parallel, the court should focus on whether they share a sufficient congruence of interests.  Romine v. Compuserve Corp., 160 F.3d 337, 340 (6th Cir. 1998).  For example, when an individual who owns and operates an entity is joined in one suit, but both the individual *and* entity are joined in the other, it is "disingenuous" to argue that the distinction renders the cases insufficiently identical for purposes of Colorado River parallelism.  Vaghashia Family Ltd. P'ship v. Vaghashia, No. LA CV 19-01876 JAK (PLAx), 2019 WL 6974307, at *7 (C.D. Cal. Nov. 1, 2019) ("where corporate entities owned and operated by the parties are parties to one suit but not another," cases are sufficiently parallel) (internal quotation marks omitted).

To determine whether the *issues* are sufficiently parallel, the court should focus on the degree to which the state court proceedings will resolve the dispute.  Currie v. Group Ins. Comm'n, 290 F.3d 1, 12 (1st Cir. 2002).  What happened in Currie is instructive.  Currie was a federal case presenting federal constitutional and statutory law claims, while the state court case dealt only with a pivotal threshold issue of state law.  Id. at 3-5.  Despite the lack of total symmetry of issues, Currie held that, because the state law determination would "moot or otherwise inform" the federal litigation, the federal proceeding must be stayed based on the Colorado River doctrine.  Id. at 3.  Mindful that, after the state court matter was concluded, the federal court might well have further work to do, Currie specified that "a stay pending the outcome of the state proceedings is the wisest course of action at this time"; to that end, Currie emphasized that the Court was "not surrendering federal jurisdiction . . . [but] retain[ing] jurisdiction to permit [it] to resolve the federal questions if a decision is ultimately necessary." Id. at 13.

13

Guided by the imperative of serving "wise judicial administration," the cases applying

Colorado River consistently hold that, if a state court case based on state law theories will

resolve substantially identical factual issues to those presented in the federal court case, there is

sufficient issue parallelism for Colorado River purposes, even though the federal case is based on

federal law.  See, e.g., Villa Marina, 947 F.2d at 533 ("not all of the federal issues are included

within the Commonwealth action, but perfect identity of issues is not a prerequisite for

[Colorado River] dismissal"); In re Novell, 2012 WL 458500, at *7 (Delaware state law to

resolve essentially same factual issue as federal court applying federal law; for the state and

federal actions to be parallel, the former need not dispose of all claims brought in the latter); N.

Am. Boxing Org. Intercontinental, Inc. v. N. Am. Boxing Org., Inc., 40 F. Supp. 2d 55, 59

(D.P.R. 1999) (Colorado River stay ordered although state court case based on state law

infringement, while federal court case invoked Lanham Act and state law; when "[w]hat is

essentially at issue in both suits is the rightful ownership and authorized use of the name and

mark[,]" the federal "lawsuit is duplicative of the state court proceeding").  Similarly, the

inclusion in the federal case of additional claims that are not parallel is not an impediment to a

Colorado River stay.  Courts have repeatedly found that a federal court may partially stay the

portion of the case that is parallel while allowing claims that are not parallel to proceed.  See,

e.g., Harris, 2018 WL 1157802, at *6 n.6 (Colorado River stay affects "some but not all of a

plaintiff's claims while awaiting decision in a parallel state court case"; listing cases finding

partial stays permissible); Abe v. New York Univ., No. 14-cv-9323 (RJS), 2016 WL 1275661, at

*3-10 (S.D.N.Y. Mar. 30, 2016) (federal claims based on ADEA and Title VII stayed because

state law claims based on same facts sufficiently parallel; ERISA claim not parallel and not

stayed); Mass. Biologic Labs. of the Univ. of Mass. v. MedImmune, LLC, 871 F. Supp. 2d 29,

33 (D. Mass. 2012) (court may "stay the federal action or certain of the claims, pending the resolution of the state court action, in the interests of cooperative federalism and judicial economy") (emphasis added).

Once the Court is satisfied that the proceedings are sufficiently parallel, it must then determine if there are exceptional circumstances that require abstention, guided by a non-exclusive eight-factor test:

> (1) whether either court has assumed jurisdiction over a *res*; (2) the [geographical] inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which the forums obtained jurisdiction; (5) whether state or federal law controls; (6) the adequacy of the state forum to protect the parties' interests; (7) the vexatious or contrived nature of the federal claim; and (8) respect for the principles underlying removal jurisdiction.

Jimenez, 597 F.3d at 27 (quoting RioGrande Cmty. Health Ctr. Inc. v. Rullan, 397 F.3d 56, 71-72 (1st Cir. 2005)). "No one factor is necessarily determinative; a carefully considered judgment taking into account both the obligation to exercise jurisdiction, and the combination of factors counselling against that exercise, is required." Jimenez, 597 F.3d at 28 (quoting Colorado River, 424 U.S. at 818-19). In assessing the factors, the Court must remain mindful that "the wise exercise of discretion is rarely a matter of score-keeping or bean-counting." Kerusa Co. LLC v. W10Z/515 Real Estate Ltd. Pship, Nos. 04 Civ 708, 709, 710 (GEL), 2004 WL 1048239, at *3 (S.D.N.Y. May 7, 2004). At bottom, the Court should issue a Colorado River stay only with full confidence that the parallel state proceeding will be an adequate vehicle for the resolution of the stayed issues and that application of the Colorado River doctrine will best serve considerations of "wise judicial administration." Jimenez, 597 F.3d at 27 (quoting Colorado River, 424 U.S. at 817).

## III.     ANALYSIS

15

### A.    "Sufficiently Parallel"

Focusing first on the parties, whether Count I-IV in the federal case and Count III in Renk v. Renk are "sufficiently parallel" depends on whether those joined in each suit have a sufficient "congruence of . . . interest[]."  Romine, 160 F.3d at 340.  To begin this inquiry, the Court compares the parties as aligned before Sequin's amendment in the federal action, which added Bunnies and Greg to Counts I-IV.  From this perspective, there is not just a "congruence of interest," but virtually identicality.  That is, Count III of the Renk v. Renk counterclaim pits Sequin against Kim acting through her "Businesses"[14]; Counts I-IV in the District of Rhode Island also pits Sequin against Kim acting through an unknown entity, sued as John Doe Corp., d/b/a Sequin.  ECF No. 1.  The practical result is that both cases seek to enjoin and recover damages from Kim and whatever may be the business or entity she owns and operates.

Viewing the matter post-amendment, the conclusion is the same.  Apart from the plainly contrived (that is, to evade Colorado River) nature of the amendment, the joinder of Bunnies and Greg changes nothing.  For starters, Bunnies is probably not a viable entity separate from Kim. See n.3 supra.  In any event, if Bunnies is a commercial entity operated by Kim, it is the target of the injunction sought both by Count III in Renk v. Renk (seeking to "permanently enjoin[] [Kim] and all those acting in concert or participation with her from using Sequin's name and brand in connection with [Kim's] Businesses"),[15] and by Counts I-IV (seeking to "enjoin [] [Kim, Bunnies and Greg], and all those acting in concert with them . . . from using Sequin trademarks").  Put differently, all of Bunnies' challenged conduct is based on the actions of its

---

[14] As noted supra, the latest iteration of Count III, drops the references to "Businesses," but retains the reference to "those acting in concert or participation with [Kim]" in the prayer for an injunction.  Renk v. Renk, Index No. 652439/2018, NYSCEF No. 238 at 20.

[15] See n.13 supra.

owner/operator, Kim.  Therefore, joining Bunnies on Counts I-IV in the Rhode Island federal

case, but not on Count III in Renk v. Renk, does not undermine the parallelism of the parties.

See Vaghashia Family Ltd. P'ship, 2019 WL 6974307, at *7 (when entities owned and operated

by parties are parties to one suit but not the other, "disingenuous" to claim not sufficiently

parallel).  Confirming this conclusion is the reality that Bunnies' sales of Sequin-branded

products and Sequin's knowledge of, and collaboration with, those sales has been the subject of

extensive discovery propounded and responded to in Renk v. Renk.  Similarly, except to avoid

Colorado River, the joinder of Greg in the Rhode Island federal case seems to have no purpose in

that Sequin has leveled only conclusory allegations against him.[16]

Turning to the issues, the factual allegations and remedies sought in Count III of the

counterclaim in Renk v. Renk and Counts I-IV of the federal complaint are substantially the

same – both effectively allege that Kim, acting for herself and through her companies (that is,

Bunnies), used the Sequin name and brand without authorization or permission or license to do

so, resulting in injury to Sequin and dilution of its brand; both seek damages and an injunction

preventing further use by Kim/Bunnies of the Sequin name and brand.  Factually, the registered

---

[16] Sequin also argues that Count III is not parallel with Counts I-IV because Bunnies and Greg would not be subject
to personal jurisdiction in New York.  ECF No. 31 at 25-26.  Sequin is right that the adequacy of the state forum is
undermined if the state court would not have jurisdiction over the person of a critical defendant.  See Elmendorf
Grafica, 48 F.3d at 53.  However, considering the documents produced in connection with the now withdrawn
motion for preliminary injunction, this argument makes no sense in the circumstances of this case.  The record is
replete with evidence, for example, of Sequin's long-standing business relationship with Bunnies, acting through
Kim and occasionally involving Greg, based in New York.  E.g., ECF No. 10-3 at 108 (2019 letter written by RJ
from Sequin's New York principal place of business, addressed to Kim and Greg at their New York address,
regarding Bunnies invoices and shipments in connection with Bunnies' stores in Newport, Rhode Island, Palm
Beach, Florida and elsewhere); ECF No. 10-4 at 4 (Sequin approves Bunnies as entity to operate pop-up stores with
merchandise to be invoiced from New York).  Also hollow is Sequin's argument that, despite its power to enjoin
Kim herself, the New York Supreme Court would lack the power to issue an injunction affecting the conduct of
Bunnies, the entity Kim admits she owns and operates.  See generally Katherine Florey, State Courts, State
Territory, State Power: Reflections on the Extraterritoriality Principle in Choice of Law and Legislation, 84 Notre
Dame L. Rev. 1057, 1058 (2009) (state court may impact nationwide behavior of person over which it has
jurisdiction through imposition of damages or issuance of injunctions; "[i]f it does so, few constitutional alarms are
likely to be sounded").

trademarks that are invoked in the federal Counts I-II, but not mentioned in <u>Renk v. Renk</u>'s Count III, cover the Sequin name in a stylized script and typeface; therefore, there is no daylight between the invocation in Count III of the need to protect Sequin's "name and brand" and the invocation in Counts I-IV of the need to protect the Sequin "brand" and "iconic trademarks," which are based on the Sequin name.  Nevertheless, despite this factual identicality of issues, there are four ways in which the issues presented in the federal action differ from those presented in <u>Renk v. Renk</u> that the Court must consider in determining issue parallelism.

First, <u>Renk v. Renk</u> presents the Count III claim of unauthorized use of Sequin's name and brand in context with Kim's claim that she owns 50% of Sequin.  The latter issue – who owns Sequin – is a threshold question, the answer to which will substantially inform and potentially moot the Sequin claim that all of Kim/Bunnies' Sequin-branded operations, past and future, including the ongoing series of pop-up stores in Newport, Rhode Island, were and continue to be unauthorized.  <u>See</u> <u>Currie</u>, 290 F.3d at 3 (<u>Colorado River</u> stay appropriate if state resolution would "moot or otherwise inform" the issue framed in federal litigation).  The ownership issue is not framed and will not be resolved in the federal case.  Therefore, this difference not only does not undermine the parallelism of Counts I-IV and Count III, but (as discussed *infra*) amounts to an exceptional circumstance strongly supportive of a <u>Colorado River</u> stay in that there would be a serious risk of inconsistent outcomes if the federal case were to reach resolution without a threshold determination of who owns Sequin.

Second is the reality that Counts I-IV in the federal case focus on Bunnies' operation of the 13 Touro Street store, which did not exist at the time Count III in <u>Renk v. Renk</u> was filed. However, while Counts I-IV may focus on 13 Touro Street, they echo Count III in that they expressly reach back in time to encompass damages from all of Kim/Bunnies' Sequin-branded

stores, alleging that "[a]t no time has Sequin given Defendants authorization or license to use the SEQUIN marks in connection with the Rhode Island Store, any other boutique or store, or non-Sequin products"; they also reach forward in time to enjoin Kim/Bunnies' future use of the Sequin name, not just at 13 Touro Street, but everywhere.  ECF No. 17 at 14 ¶ 37 (emphasis added); ECF No. 17 at 27.  Count III is the same in that it seeks damages from all past use of the Sequin name and brand and expressly seeks to enjoin all future use.  ECF No. 29-9 at 16. Confirming that Sequin interprets Count III as asserting the right to ban the use of the Sequin name and brand at 13 Touro Street is its argument that the filing of Count III amounted to notice to Kim/Bunnies that whatever authorization she had had to use the Sequin name or to sell Sequin-branded products in the past was revoked so that the 13 Touro Street store plainly was infringing.  See n.9 supra.

Third, Counts I-IV are based on federal law (the Lanham Act) and Rhode Island law (common and statutory law of infringement), while, in New York, Sequin has never plead what law it is seeking to invoke in Count III.  Indeed, throughout the proceedings in this Court, Sequin did not clarify what law it will rely on for Count III in Renk v. Renk, arguing only that it is not the Lanham Act and not Rhode Island law.  This apparent[17] difference does not undermine the parallelism of the issues as long as the factual issues to be resolved in both cases are substantially identical.  See N. Am. Boxing Org., 40 F. Supp. 2d at 59 (when "[w]hat is essentially at issue in both suits is the rightful ownership and authorized use of the name and mark," federal lawsuit is duplicative of state court proceeding even though Lanham Act is raised only in federal court); In re Novell, 2012 WL 458500, at *8 ("[w]here both this court and the Delaware court must

---

[17] Kim argues that Sequin's silence leaves it free to invoke the Lanham Act in the New York Supreme Court.  While that may well true, for purposes of the Colorado River analysis, the Court has assumed that federal law and Rhode Island law are invoked only in the federal case, while the state case relies on the state law of another state.

determine the 'materiality' of any alleged misrepresentation or omission on the same set of facts using the exact same standard, . . . the issues involved in these cases, even though they stem from different sources of law, are substantially the same") (internal quotation marks omitted).  This is particularly true when, as here, the federal cause of action is one that the state court may concurrently entertain and has experience applying.[18]  <u>Ryan v. Volpone Stamp Co. Inc.</u>, 107 F. Supp. 2d 369, 395 (S.D.N.Y. 2000) ("federal court's jurisdiction over Lanham Act claims is concurrent with that of the state courts"); <u>Greater Westerly-Pawcatuck Area Chamber of Commerce v. S. Kingstown Chamber of Commerce, Inc.</u>, No. WB-11-0741, 2011 WL 7072123, at *4 (R.I. Super. Ct. Jan. 1, 2011) (Rhode Island state court applies Lanham Act); <u>Dell Pub. Co. v. Stanley Publ'ns, Inc.</u>, 172 N.E.2d 656, 660 (N.Y. 1961) (New York state court applies Lanham Act).  Thus, if the Court posits that Sequin plans to rely, for example, on New York law in <u>Renk v. Renk</u>, parallelism is not undermined because all three sources of law (federal, Rhode Island and presumably New York) are substantially aligned, requiring proof of essentially the same elements and the same legal analysis.  <u>See</u> <u>Greater Westerly-Pawcatuck</u>, 2011 WL 7072123, at *4 ("theories for relief under the Lanham Act and common-law unfair competition are essentially the same and require the same legal analysis"); <u>F.W. Myers & Co. Inc. v. World Prods. Int'l, Inc.</u>, 903 F. Supp. 353, 356 (N.D.N.Y. 1995) (claim under New York state law and Lanham Act require virtually the same elements).

Last is Sequin's addition to the federal case of the unrelated (to either Counts I-IV in the federal claim or Count III in <u>Renk v. Renk</u>) defamation and tortious interference claims against

---

[18] A potential exception, not applicable here, arises when the federal cause of action invoked in the federal case is not available to the state court.  <u>Compare</u> <u>Cottrell v. Duke</u>, 737 F.3d 1238, 1245 (8th Cir. 2013) (actions are not parallel when federal claim is subject to exclusive federal court jurisdiction), <u>with</u> <u>In re Novell,</u> 2012 WL 458500, at *7 (two cases can be parallel even when the federal case involves claims over which the federal courts have exclusive jurisdiction; <u>Colorado River</u> abstention appropriate).  Because the Lanham Act creates a cause of action as to which federal and state courts have concurrent jurisdiction, the Court need not tackle this unresolved debate.

Kim; these new Counts (V and VI) arise from the ongoing battle raging in Kim's *second* New York state court case, which she filed in March 2020. ECF No. 29-18 at 2; Renk v. Renk, Index No. 153019/2020 (N.Y. Sup. Ct.). As noted *infra*, the Court finds that Sequin's tactic in adding these unrelated claims to this case on the heels of a Colorado River motion is pertinent to the exceptional circumstance analysis. See Abe, 2016 WL 1275661, at *10 (finding vexatiousness based on plaintiff's addition of unrelated ERISA claim in amended complaint filed just weeks after defendant expressed intent to seek dismissal under Colorado River). Nevertheless, the effort is feckless in that, when the overlapping (with the state court case) claims are distinct and unrelated to the remainder of the case, a partial stay of only the overlapping portion of the federal case is permissible. Mass. Biologic Labs., 871 F. Supp. 2d at 33 (court may, "under certain circumstances, stay the federal action or certain of the claims, pending the resolution of the state court action, in the interests of cooperative federalism and judicial economy") (emphasis added).

Based on the foregoing and focusing only on the federal Counts I-IV and New York's Count III in the Renk v. Renk counterclaim, the Court finds that there is a "substantial likelihood that the state litigation will dispose of all claims presented in the [pertinent portion of the] federal case." Bradeen v. Bank of N.Y. Mellon Trust Co., Civil Action No. 18-cv-11753, 2018 WL 5792319, at *4 (D. Mass. Nov. 2, 2018) (internal quotation marks omitted). Because the overarching issue in both claims is the rights and obligations of the parties regarding control over the use of Sequin's name and brand and because Sequin and Kim/Bunnies, who are the person/entities with a stake in the outcome, are effectively parties to both actions, the Rhode Island (Counts I-IV) and New York (Count III) claims are "sufficiently parallel" in form and substance for the purpose of determining whether a Colorado River stay is warranted. See Faith v. Truman Capital Advisors, LP, Case Nos. 19-cv-11301-DJC, 19-cv-11477-DJC, 2020 WL

263534, at *4 (D. Mass. Jan. 16, 2020) (when "state and federal complaints arise out of the same transactions, the parties seek essentially the same relief in each suit, and resolution of the two cases will involve the same evidence," Colorado River stay appropriate) (internal quotation marks omitted).

B.    **"Exceptional Circumstances"**

Sufficiently parallel proceedings are not enough to slip through the Colorado River crevice.  Jimenez, 597 F.3d at 27.  The Court should not stay its hand unless there are exceptional circumstances to justify a stay by reference to the eight-factor test.

In this case, the first two and eighth factors are relatively neutral.  As to the first factor, this is not an *in rem* action and neither this Court nor the state court has obtained jurisdiction over a *res*.[19]  See Mass. Biologic Labs., 871 F. Supp. 2d at 37 (first factor is neutral because neither state nor federal action involves comprehensive disposition of rights in particular piece of property).  As to geographic inconvenience (factor two), with Sequin's principal place of business in New York, there seems to be a New York center of gravity to the overall dispute, arguably tipping convenience towards New York as the better forum.  However, with the pertinent individuals living in various states and Sequin also having an office in West Warwick, Rhode Island, the parties who would benefit from a New York forum (Sequin and Linda, a New York resident) having chosen Rhode Island, and parties who live in Rhode Island asking for the

---

[19] Alternatively, the *res* may be viewed simply as a property whose ownership and control is in issue, a perspective that the First Circuit has endorsed.  Jimenez, 597 F.3d at 28 n.6 (federal court with concurrent jurisdiction should defer to state court "for the sake of comprehensive disposition of rights in a particular piece of property"); see Nazario-Lugo v. Caribevision Holdings, Inc., 670 F.3d 109, 118 (1st Cir. 2012) (in First Circuit, focus is on property, not tangible assets).  Here the right to use of the Sequin name and brand in the past and continuing in the future is in issue in both cases, creating a serious risk of inconsistent disposition of that property right.  See Jimenez, 597 F.3d at 28.  Viewed through this lens, factor one blends into factor three and is strongly supportive of a finding of an exceptional circumstance justifying a stay.  Changing the focus to the "property" constituting the 13 Touro Street store does not tip the balance back in that the evidence establishes that the store on Touro Street is no longer operating, as well as that Kim/Bunnies also has long been operating Sequin-branded stores in Florida (e.g., Palm Beach), New York and elsewhere.  See e.g., ECF No. 10-3 at 102-04.

stay, this factor is neutralized.  Factor eight – respect for principles underlying removal litigation – is relevant if a plaintiff is attempting to evade the policy in 28 U.S.C. § 1441 that only a defendant can remove a lawsuit from state court to federal court.  United States v. Fairway Capital Corp., 483 F.3d 34, 44 (1st Cir. 2007).  The parties agree that factor eight is not in play.  ECF Nos. 29-1 at 25; 31 at 28.

Factors five and six are related in that they focus on whether state or federal law controls and the adequacy of the state forum to protect the parties' interests, particularly if the federal case is based on federal law.  The starting point for the analysis is the bedrock principle that the presence of federal law questions in the federal case must always be a major consideration weighing against surrender of jurisdiction.  Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 26 (1983).  However, in this case Sequin's invocation of the Lanham Act in federal court is somewhat neutralized by the ability of the New York state court to exercise concurrent jurisdiction over a Lanham Act claim, coupled with the reality that all potential sources of pertinent law (federal, Rhode Island and presumably, New York) are substantially similar.  A further counterbalance is that the New York Supreme Court will be called upon to resolve the threshold state law issues of corporate control and governance framed by Kim's claim that she owns a 50% interest in Sequin.  These matters must be resolved before Kim's right to use the Sequin name and brand should be tackled, yet the federal court cannot address those threshold matters.  See Currie, 290 F.3d at 10-11 (when issue of state law is threshold question that may moot or otherwise inform federal law issues, Colorado River stay is appropriate).  As to factor six, there is no reason to posit that the New York Supreme Court will not be able to adjudicate to conclusion both factual issues: Kim's ownership of Sequin and Kim/Bunnies' right to use the Sequin name and brand.  Thus, these two factors do not tip strongly either way, except

23

to establish that a stay – if affirmatively warranted based on other factors – would not prejudice the federal court plaintiff.  See generally Villa Marina, 947 F.2d at 536.

The remaining factors – three, four and seven – are determinative; they collectively establish that the weight of the factors supporting exceptional circumstances justify a Colorado River stay of Counts I-IV.

Factor three – the desirability of avoiding piecemeal litigation – "requires something more than garden-variety inefficiency associated with the concurrent litigation of parallel actions."  Mass. Biologic Labs., 871 F. Supp. 2d at 37.  It is afforded the most weight when there is piecemeal litigation that "would *severely prejudice* one of the parties."  N. Am. Boxing Org., 40 F. Supp. 2d at 57 (emphasis in original) (quoting Rojas-Hernandez v. P.R. Elec. Power Auth., 925 F.2d 492, 496 (1st Cir. 1991)).  Factor three derives directly from the holding of Colorado River, which focused on the special complications and prejudice arising from piecemeal adjudication of water rights given the highly interdependent nature (with property rights) of such claims.  Colorado River, 424 U.S. at 819.

In the circumstances presented here, factor three is strongly supportive of a finding that exceptional circumstances justify a Colorado River stay.  Renk v. Renk will resolve, first, whether Kim is the owner of 50% of Sequin, or a mere "disgruntled employee" as Sequin alleges in the Rhode Island case, or something in between.  ECF No. 17 ¶ 1.  This determination may moot, and certainly will inform,[20] the second issue for resolution by the New York Supreme Court – Count III's allegation that Sequin never authorized Kim, acting through Bunnies or otherwise, to use the Sequin name and brand (including at 13 Touro Street in Newport), as well

---

[20] Sequin argues correctly that a holding that Kim owns 50% of Sequin does not translate *per se* into the holding that she was authorized to use its name and brand through Bunnies.  ECF No. 31 at 17.  That is why the New York Supreme Court must tackle these issues as discrete questions.  Nevertheless, there can be no doubt that the answer to the first issue will inform and may moot the second.  See generally Currie, 290 F.3d 1.

as, if the use was unauthorized, what damages and injunctive relief should be awarded to Sequin.

If the federal court forges ahead focused on the second question (framed here by Counts I-IV),

and the question is somehow resolved before the state court answers the same question, the

parties face a serious risk of an inconsistent disposition of the matter, which is the quintessential

prejudice that the <u>Colorado River</u> doctrine was crafted to avoid.  <u>See</u> <u>N. Am. Boxing</u>, 40 F. Supp.

2d at 60 (where state court must decide right to use of brand name, which is same as issue

pending in federal court, "potential for harmful inconsistent determinations" strongly weighs in

favor of <u>Colorado River</u> abstention).  The prejudice is exacerbated in this case because of the

potential not only for precisely the sort of prejudicial piecemeal litigation <u>Colorado River</u>

abstention is designed to avoid, but also because there is a strong possibility that the state-court

judgment on the issue of Sequin's ownership could preclude the infringement claim brought in

the federal forum, while the reverse is not true, in that this Court cannot decide who owns Sequin

and who controls Sequin's decision-making about the use of its name and brand.  <u>See generally</u>

<u>Abe</u>, 2016 WL 1275661, at *7.  The third factor establishes an exceptional circumstance and

weighs heavily in favor of abstention.

Factor four – the order in which the forums obtained jurisdiction – requires the Court to

take a pragmatic, flexible look at the realities of the case at hand, focused not just on which

complaint was filed first, but rather on how much progress has been made in the two actions.  <u>N.</u>

<u>Am. Boxing</u>, 40 F. Supp. 2d at 57; <u>see</u> <u>KPS & Assocs., Inc. v. Designs By FMC, Inc.</u>, 318 F.3d

1, 11 (1st Cir. 2003) (factor four tips against abstention; even though state court case was filed

first, it "was proceeding anemically," whereas federal case was being prosecuted "at an

appreciable pace"); <u>Mass. Biologic Labs.</u>, 871 F. Supp. 2d at 37 (fourth factor favors stay

because state court action was filed first and has progressed further).  This is not a close call – in

the New York Supreme Court, the motion to dismiss has been decided, discovery (including regarding Bunnies and its sales) is well-advanced and a firm trial date is less than four months away, while in federal court, nothing significant has occurred with respect to the progress of the matter except that a motion to dismiss Counts V and VI is under advisement. The fourth factor reinforces the exceptional circumstance and weighs in favor of abstention.

Finally, the Court turns to factor seven – the vexatious or contrived nature of the federal claim. This inquiry is bifurcated. First, the Court applies factor seven to the original filing of Counts I-IV; second, the inquiry shifts to the amendment, which added Bunnies and Greg to Counts I-IV and introduces defamation/tortious interference claims (Counts V and VI) into the family dispute.

Kim argues that Counts I-IV were brought for the vexatious and contrived purpose of opening another litigation front to drain her resources and "bleed[] [her] dry." ECF No. 29-1 at 39. The timing of the federal filing, and the questionable merit of Counts I-IV, which are based on pleadings replete with omissions of material facts and misleading representations, compel the finding that this argument is well founded – that Sequin filed this case as "a defensive tactical maneuver, based on a contrived federal claim." N. Am. Boxing, 40 F. Supp. 2d at 61; see also Abe, 2016 WL 1275661 at *10 (court concerned that it was being used as a "tool of harassment"); Bernstein v. Hosiery Mfg. Corp. of Morganton, Inc., 850 F. Supp. 176, 185 (E.D.N.Y. 1994) (federal court used as a "tool for harassment" in vexatious suit).

To take just a few examples, in federal court, Sequin stridently asserted that it did not know anything about Kim/Bunnies' "unauthorized boutique" in Newport, Rhode Island, until December 14, 2019, after which it investigated, wrote a cease and desist letter and promptly sued. ECF No. 1 ¶¶ 2, 28, 39-40. It further asserted that, until after it sued Kim in Rhode Island,

it did not know that Bunnies was using the Sequin name to sell Sequin-branded product in Newport at the 13 Touro Street store; it claimed with "ah-ha" emphasis that "Defendants *admit* that they operated the store at issue here—and only did so *after* Sequin commenced this action." ECF No. 31 at 23 (emphasis in original).  These allegations and argument are thoroughly belied by the unrebutted evidence (drawn largely from the <u>Renk v. Renk</u> record) presented in connection with the withdrawn motion for preliminary injunction, which lays out the starkly inconsistent reality that Linda and RJ were long aware that the Kim/Bunnies had been operating Sequin-branded pop-up stores in such places as Florida, Rhode Island and Massachusetts; that Linda and RJ <u>personally received</u> emails from Bunnies reporting on its Sequin-branded sales from the Newport, Rhode Island, stores, including emails from October 1, 2019, through January 5, 2020, reflecting sales from 13 Touro Street; that Linda and RJ personally attended the 2010 management meeting at which the Bunnies pop-up plan was put in motion; and Linda and RJ personally communicated with each other and Kim over the years about the financial details related to Bunnies' Sequin-branded store operations.  ECF Nos. 10-3 at 3 ¶¶ 5, 8, 9, 10; <u>id.</u> at 5 ¶¶ 14-15; <u>id.</u> at 14-64; 10-4 at 2-4; 10-5; 10-6; 10-8; 10-9; 10-10.  That is, Sequin's claim that it initiated the federal case after making the "shocking" discovery that a disgruntled employee had just begun using its name and brand appears entirely contrived in that Kim, acting through Bunnies, used the Sequin name at 13 Touro Street in the same way that she had been using it in Newport, Rhode Island, and in Florida and elsewhere for seven or more years and that Sequin supported her use, with the full knowledge and participation of both Linda and RJ.  Nor did Sequin present anything beyond RJ's *ipse dixit* (<u>see</u> ECF No. 10-7 at 3-5) to suggest that the parties' prior course of dealings had changed or to establish that Bunnies' change of location of its Newport pop-up store to 13 Touro Street for the 2019 holiday season would require a renewal

of the authorization by Sequin.  Nor did Sequin bother to check whether 13 Touro Street was still operating when it asked for a preliminary injunction.  The vexatious and contrived nature of Counts I-IV is a very significant factor weighing in favor of abstention.

Also clearly vexatious is Sequin's amendment of the complaint, which was filed in direct response to Kim's first Colorado River motion.  The timing of the addition of the unrelated[21] defamation/tortious interference claims confirms that they were added merely to stave off abstention.  Abe, 2016 WL 1275661, at *10 (addition of newly added claim weighs heavily in finding of vexatiousness).  The same is true of the joinder of Greg, against whom Sequin has leveled only conclusory allegations.

In conclusion, I find that wise judicial administration counsels that, in accordance with the Colorado River doctrine, Counts I-IV should be stayed pending the resolution of Count III of Sequin's counterclaim in Renk v. Renk not only because these overlapping claims are "sufficiently parallel," but also because there are exceptional circumstances that justify abstention, including the potential for harmful inconsistent determinations, the fact that the state court proceeding is substantially more advanced than this one, the fact that the state forum would be as adequate as this forum to resolve the pertinent issues and the fact that Sequin's federal action is vexatious and contrived.  "[T]he realities of the case at hand," Moses H. Cone, 460 U.S. at 21, favor deference to the New York state court, Villa Marina, 947 F.2d at 537, while the remaining Counts – V and VI – will continue to be actively litigated in this forum.

What remains is for the Court to fashion an appropriate stay order.

### C. Partial Stay with Retention of Jurisdiction

---

[21] That the claims in Renk v. Renk and the employment and reputational claims in Kim's second New York state case are "separate and distinct" was confirmed when the judge in the latter case declined to transfer the matter to the Renk v. Renk judge.  Renk v. Renk, Index No. 153019/2020, NYSCEF No. 41 (N.Y. Sup. Ct. Aug. 24, 2020).

Further proceedings on Counts I-IV are hereby stayed pending resolution of Count III in Renk v. Renk.  This stay does not surrender jurisdiction over this case to the New York Supreme Court.  Rather, mindful of the "heavy presumption in favor of retaining jurisdiction," Villa Marina, 947 F.2d at 531, and guided by Currie, the Court's stay order suspends litigation of the overlapping claims, with jurisdiction retained to permit this Court to resolve remaining questions if a decision is ultimately necessary.  Currie, 290 F.3d at 13.  In furtherance of this goal, the parties are invited to seek reconsideration or modification of the stay to the extent that developments in the New York state court action warrant that it should be altered.  Because jurisdiction is retained and to allow this Court to monitor the status of the New York Supreme Court litigation, following a meet and confer with the other parties, Sequin is ordered to file a short joint status report regarding the progress of the Count III issues in Renk v. Renk beginning on December 31, 2020, and quarterly thereafter, subject to further order of the Court.

## IV.    CONCLUSION

Based on the foregoing, the motion of Defendants to stay Counts I-IV is granted.  The Court retains jurisdiction for the parties to return to the Court in the event that any issues remain after the state court litigation is resolved.  Counts V and VI remain actively pending.  Beginning on December 31, 2020, and thereafter quarterly, Sequin is ordered to file a short joint status report regarding Count III in Renk v. Renk.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
October 2, 2020